IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA RIAUBIA, individually<br>and for all persons similarly situated,<br>*Plaintiff*, | :<br>:<br>: | |
| v. | :<br>: | CIVIL ACTION<br>NO. 16-5150 |
| HYUNDAI MOTOR AMERICA,<br>*Defendant*. | :<br>:<br>: | |

**Jones II, J.**                                                                                             **August 22, 2017**

### MEMORANDUM

Plaintiff Joshua Riaubia purchased a 2015 Hyundai Sonata Limited in August of 2014. That vehicle, along with various other models, comes equipped with a "Smart Trunk," a feature that is advertised by Hyundai Motor America ("Defendant" or "HMA") as being able to "automatically open the trunk fully, or at least wide enough for a person to deposit bulky items into the trunk – such as shopping bags, duffle bags, and sports equipment – without having to put the items down or manually open the trunk lid." Compl. ¶ 3. Plaintiff claims that, despite those representations, "the Smart Trunk is defective in that it will frequently fail to open more than a few inches," and sometimes it "never open[s] more than a crack." *Id*. at ¶ 4. Riaubia is a citizen of Pennsylvania, and HMA is a California corporation. *Id*. at ¶¶ 9-10.

To recover for damages caused by this alleged defect, Plaintiff brings a series of claims under federal and state law on behalf of himself and a putative class of purchasers of various Hyundai models equipped with the same allegedly defective Smart Trunk feature: (1) violation of California's Unfair Competition Law; (2) violation of California's False Advertising Law; (3) violation of California's Consumer Legal Remedies Act; (4) breach of express warranty under Pennsylvania law; (5) breach of implied warranty of merchantability under Pennsylvania law; (6)

1

violation of the federal Magnuson-Moss Warranty Act, and, in the alternative, (7) unjust enrichment.

Defendant has moved to dismiss the Complaint pursuant to Federal Rule 12(b)(6) on various grounds, including lack of standing and failure to allege a defect, or any wrongful act. Defendant also challenges Plaintiff's right to bring an alternative unjust enrichment claim or pursue a nationwide class action under California law. For the following reasons, the motion is denied in all respects.

## STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[A]ll civil complaints must now set out sufficient factual matter to show that the claim is facially plausible." *Fowler*, 578 F.3d at 210 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

**DISCUSSION**

Plaintiff has successfully defended against HMA's 12(b)(6) motion. Contrary to Defendant's assertions, Riaubia has standing to bring this class action. And the Complaint states consumer-fraud and warranty claims, as well as a properly pleaded alternative unjust enrichment claim.

I. **Plaintiff Has Standing to Bring this Class Action**

To establish Article III standing in a class action, at least one of the named plaintiffs must show "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358–59 (3d Cir. 2015) (citing *Susan B. Anthony List v. Driehaus,* 134 S. Ct. 2334, 2341 (2014) (alterations in original) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). Riaubia has standing to bring this class action because, like the absent class members, he has allegedly suffered economic injury from purchasing a vehicle of the same make with the same allegedly non-conforming Smart Trunk feature. *See Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353 (3d Cir. 2015) (finding that the named plaintiff had standing to represent absent class members based on his own alleged injury).

HMA does not disagree that Plaintiff has standing to bring his own claim; rather it challenges his standing to represent absent class members that suffered the same injury but from purchasing *different* vehicle models. Def.'s Opening Br. 4-6. Defendant's argument is unavailing. "[O]nce the named parties have demonstrated they are properly before the court," adequacy of representation becomes "one of compliance with the [class certification] provisions of Rule 23, not one of Article III standing." *Neale*, 794 F.3d at 361 (citing *In re Prudential*, 148

F.3d 283, 307 (3d Cir.1998) (quoting *Goodman v. Lukens Steel Co.,* 777 F.2d 113, 122 (3d Cir.1985), *aff'd,* 482 U.S. 656 (1987)).

The more persuasive cases cited by the parties confirm this rule in class actions where, like this one, absent members were allegedly injured by the same non-conforming feature of different models of the same product, manufactured or distributed by the same defendants based on uniform representations. *See, e.g., NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir. 2012) ("But whether [the named plaintiff] has 'class standing'— that is, standing to assert claims *on behalf of* purchasers of Certificates from other Offerings, or from different tranches of the same Offering—does not turn on whether [the plaintiff] would have statutory or Article III standing to seek recovery for misleading statements in those Certificates' Offering Documents.") (emphasis in original); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012) ("When a class includes purchasers of a variety of different products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types.").

Defendant improperly relies on a dissenting opinion in *Gratz v. Bollinger*, 539 U.S. 244 (2003), an equal protection case involving the use of race in college admissions, for the proposition that a named plaintiff's and absent class members' "injury-in-fact" must have been caused by the identical product. Def.'s Br. at 4. In *Gratz*, Justice John Paul Stevens, writing for a minority, raised the issue of Article III standing *sua sponte* on the grounds that the named plaintiff had not alleged any "real and immediate" personal injury, only a "conjectural or hypothetical" one, and that his alleged injury as a potential transfer student did not give him standing to represent an absent class of college freshman because the university used different

4

race-based admissions standards for transfer students and freshmen applicants. *Gratz,* 539 U.S. at 260-63. The Court's majority disagreed, and concluded that the named plaintiff's own injury was sufficient for standing and that any difference in the use of race in transfer versus freshman undergraduate admissions did not "implicate a significantly different set of concerns" to undermine the named plaintiff's standing or his adequacy to represent the class under Rule 23. *Id.* at 261-65. Similarly, there is no indication in this case that the differences across the various vehicle models of the same make raise a sufficiently "different set of concerns" to undermine Riaubia's standing to bring this class action.

## II. Plaintiff Sufficiently Pleaded a Defect for Consumer-fraud and Warranty Claims

The parties agree, for purposes of this motion, that the Complaint sufficiently alleges all the elements of the various consumer-fraud and breach-of-warranty claims except one: a wrongful act. Defendant's main argument is that Plaintiff has failed to allege a defect, because the Smart Trunk admittedly opens "hands-free"—no matter how wide—as alleged in the Complaint. HMA contends that this is enough to conform to the alleged warranties and consumer protection laws. Def.'s Br. 1, 7-11. It argues that Plaintiff's "subjective" dissatisfaction with how narrowly the trunk opens does not amount to a breach or violation. And, in any event, the alleged defect does not "substantially impair" the value of the vehicle to justify any remedy beyond repair or replacement as provided under HMA's written warranty. *Id.* at 8-10.

Defendant misses the mark because, on a 12(b)(6) motion, this Court must accept the factual allegations as true. *See Phillips*, 515 F.3d at 233. Indeed, according to the Complaint, Defendant represented throughout various media that the Smart Trunk would open wide enough, on its own, to allow someone to place their bags inside without having to manually lift the hatch.

5

*See* Compl. ¶¶ 20-74. On those allegations, it is plausible that the alleged defect could be a breach of the alleged warranties or relevant consumer protection laws. Ultimately, whether or not the alleged defect amounts to a breach or violation will be a question for the fact-finder and cannot form the basis for disposing of these claims on a 12(b)(6) motion.

Nor is the written warranty a barrier to relief since Plaintiff has sufficiently pleaded that, in spite of multiple attempts to repair or replace the defective part, the Smart Trunk still does not conform to the alleged descriptions. *See* Compl. ¶¶ 75-91. Whether the written warranty has, in fact, failed its "essential purpose," as required to allow for additional remedies, will also be a question for the fact-finder. *See Robinson v. Freightliner LLC*, No. 08-CV-761, 2010 WL 887371, at *4 (M.D. Pa. Mar. 10, 2010) ("[w]hether a limited warranty has failed its essential purpose is a *question of fact for the jury."*) (quoting *Woolums v. Nat'l RV*, 530 F. Supp. 2d 691, 701 (M.D. Pa. 2008). Plaintiff has sufficiently pleaded a wrongful act under the alleged warranty and consumer fraud laws and thus those claims survive this 12(b)(6) motion.[1]

### III. **Plaintiff Properly Pleads Unjust Enrichment in the Alternative**

At this stage in the litigation, neither party disagrees that a contract, including a limited warranty, applies here. They disagree, however, whether this fact alone is dispositive in deciding to dismiss the alternative unjust enrichment claim.

The weight of authority, as cited by the parties, confirms Plaintiff's right to plead an alternative unjust enrichment claim under Federal Rule 8, although ultimately Plaintiff will be able to recover on the basis of only one of these legal theories. *See, e.g., Powers v. Lycoming Engines*, No. 06-cv-2993, 2007 WL 2702705, at *3 (E.D. Pa. Sept. 12, 2007) (Savage, J.)

---

[1] Defendant also argues that the vehicles with the allegedly defective Smart Trunk are "generally considered merchantable" because they "provide safe, reliable transportation." Def.'s Br. 7-8. As Plaintiff astutely observes, however, Defendant's assertion is based on an "antiquated view of cars" because consumers today "expect more than just safety and reliable transportation" when they select one vehicle over another. Pl.'s Br. 18 n.12.

6

("plaintiffs are permitted to plead their unjust enrichment claim as an alternative to their breach of contract claim.") (citing *Enters. v. Pittsburgh Water & Sewer Auth.,* 103 F.3d 1165, 1175 (3d Cir. 1997); *Retail Brand All., Inc. v. Rockvale Outlet Ctr., LP*, No. 06-cv-01857, 2006 WL 3061136, at *5 (E.D. Pa. Oct. 26, 2006) (Stengel, J.). The unjust enrichment claim therefore also survives this 12(b)(6) motion.

## IV. Choice-of-Law Issues Are Not Yet Ripe for Resolution

Finally, Defendant prematurely attempts to dismiss the claims under California law using a choice-of-law analysis. As Plaintiff correctly notes, however, courts in the Third Circuit have consistently held that deciding a conflict-of-laws question requires a factual record and is therefore inappropriate for resolution on a motion to dismiss. *See In re: Domestic Drywall Antitrust Litig. Civil Action*, No. 13-cv-2437, 2016 WL 3769680, at *5 (E.D. Pa. July 13, 2016) (declining to undertake a choice-of-law analysis in a nationwide class action at the motion to dismiss stage) (citing *Graboff v. The Collern Firm*, No. 10-cv-1710, 2010 WL 4456923, at *8 (E.D. Pa. Nov. 8, 2010) ("Due to the complexity of [choice of law] analysis, when confronted with a choice of law issue at the motion to dismiss stage, courts within the Third Circuit have concluded that it is more appropriate to address the issue at a later stage in the proceedings.") (alteration supplied). As the Honorable Michael Baylson noted in *In re: Domestic Drywall*, Defendant's "arguments are serious and merit consideration, but it is premature for the Court to rule on these issues at this time." *Id*.

In conclusion, Defendant's motion to dismiss the Complaint is denied in all respects.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. Darnell Jones, II    J.