IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSHUA RIAUBIA, individually and on behalf of all others similarly situated,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| v. | : | No. 16-5150 |
| | : | |
| **HYUNDAI MOTOR AMERICA** | : | |
| **Defendant.** | : | |

**MEMORANDUM**

**SITARSKI, M.J.**                                                                                                   **August 6, 2019**

Pending before the Court is Plaintiff's Unopposed Motion for Certification of Settlement Class, Preliminary Approval of Settlement, Appointment of Class Counsel, and Approval of Class Notice (ECF No. 42).[1] Plaintiff Joshua Riaubia ("Plaintiff") and Defendant Hyundai Motor America ("Defendant") have agreed to a class action settlement that will resolve the instant matter, in which Plaintiff alleges that Defendant's 2015, 2016, and 2017 Hyundai Sonata U.S. specification vehicles equipped with the Smart Trunk feature were defective, as their hands-free, proximity-activated trunks did not fully open. For the following reasons, Plaintiff's Motion will be GRANTED.

**I.      BACKGROUND**

  **A.      Factual Background and Procedural History**

In August of 2014, Plaintiff purchased a 2015 Hyundai Sonata Limited equipped with the Smart Trunk Feature. (Complaint ¶ 9, ECF No. 1). The Smart Trunk allowed consumers to open their vehicles' trunks "hands-free" by standing directly behind the vehicle while holding a key

---

[1] The Honorable C. Darnell Jones, II referred the matter to me for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (Order, ECF No. 45).

fob. (*Id.* ¶¶ 14, 17). Plaintiff's Smart Trunk opened only a few inches. (*Id.* ¶ 76). Plaintiff consulted with counsel, who discovered dozens of similar complaints from owners of Hyundai Sonatas. Thus, on September 28, 2016, Plaintiff filed the instant class action on behalf of himself and others similarly situated. (Pl.'s Br. 2). In response, on December 23, 2016, Defendant filed a Motion to Dismiss, (ECF No. 2), which Judge Jones denied in full on August 22, 2017. (ECF No. 22). Thereafter, on October 6, 2017, Defendant filed its Answer. (ECF No. 29).

The parties then began discussing the possibility of mediation, and filed a joint stipulation requesting to stay the litigation proceedings pending mediation. (Stipulation, ECF No. 31). During their initial mediation session before David Geronemus of JAMS, held in New York City on January 9, 2018, the parties made some progress towards reaching a resolution. (Pl.'s Br. 5). On May 15, 2018, a second mediation session was held, and the parties executed a term sheet wherein they set forth the majority of terms that would be agreed to in the eventual settlement. (*Id.*) On February 15, 2019, Plaintiff filed the instant unopposed Motion. By Order dated July 3, 2019, Judge Jones referred the Motion to me for disposition. (Order, ECF No. 45).

### B. The Proposed Class Action Settlement

The terms of the proposed class action settlement are set forth in the Settlement Agreement, (Declaration of Natalie Finkelman Bennett Ex. 1, ECF No. 42-3), and are outlined below.

#### 1. The Proposed Settlement Class

The Settlement Agreement provides for a Settlement Class defined as follows:

> All persons or entities in the fifty United States and the District of Columbia who currently own or lease, or previously owned or leased, a model year 2015 to 2017 U.S. specification Hyundai Sonata vehicle equipped with the Smart Trunk feature purchased in the fifty United States and the District of Columbia.

(Pl.'s Br. 5-6). Excluded from the Settlement Class are:

2

>Defendant, as well as Defendant's affiliates, employees, suppliers, officers, and directors, attorneys, agents, insurers, and dealers; third-party providers of extended warranty/service contracts; independent repair/service facilities; the attorneys representing Defendant in this case; the judges and mediator to whom this case is assigned and their immediate family members; all persons and entities who request exclusion from (opt-out of) the Settlement; all persons and entities who previously released any claims encompassed in this Settlement or whose vehicle was permanently transported outside the United States; and all persons or entities claiming personal injury or property damage other than to a Class Vehicle or claiming subrogation of such claims.

(*Id.* at 6).

### 2.     **The Proposed Settlement Terms**

In exchange for a release of Settlement Class members' claims against Defendant, the Settlement Agreement states that Defendant will provide Settlement Class members with: (1) a cash payment in the form of a $50 debit card or $100 dealer credit; (2) replacement of the defective parts of Class vehicle trunks, followed by a second replacement if necessary; (3) a warranty extension; and (4) reimbursement of any previous repair costs they incurred in their efforts to fix the Smart Trunk feature of the Class vehicle.  (Pl.'s Br. 6).

Defendant will be responsible for bearing the cost of providing Class members with notice of the Settlement Agreement.  Defendant's Consumer Affairs Division, serving as the Settlement Administrator, will be responsible for providing Class members with notice, as well as appropriate state and federal officials, in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715. (*Id.* at 9).  The Administrator will send Class members notice via first class mail, and will resend any returned notices that contain an address correction or forwarding address.  (*Id.* at 10).  The Administrator will also maintain a website where Class members can get more information about the Settlement Agreement, and where they can submit claims either online or via email.  (*Id.*).

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(e), the settlement of a class action requires court approval.  Fed. R. Civ. P. 23(e)(2).  "Thus, when a district court is presented with a class settlement agreement, the court must first determine that the requirements for class certification under Rule 23(a) and (b) are met, and must separately determine that the settlement is fair to the class under [Rule] 23(e)."  *In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 581 (3d Cir. 2014) (citations and internal quotation marks omitted).  These procedures aim to provide "transparency for class members and authority to the district court to act as a fiduciary for putative class members by 'guarding the claims and rights of absent class members.'"  *Id.* (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010)).

Review of a proposed class action settlement generally occurs in two stages.  At this preliminary stage, counsel submits the proposed settlement terms to the Court, and the Court then makes a "preliminary fairness evaluation."  *In re Nat'l Football League Players' Concussion Injury Litig.*, at 582 (quoting *Manual for Complex Litigation* § 21.632).  "If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement to afford them an opportunity to be heard, opt out of the class, or object to the settlement." *Silvis v. Ambit Energy L.P.*, No. 14-5005 2018 WL 1010812 at *3 (E.D. Pa. Feb. 22, 2018) (citing Fed. R. Civ. P. 23(c)(3), (e)(1), (e)(5); *Manual for Complex Litigation* § 21.633).  Once notification has occurred, the Court then conducts the formal "fairness hearing" provided for in Rule 23(e)(2).  *Id.*  (citing *Manual for Complex Litigation* § 21.633).  After the Court determines that the settlement is "fair, reasonable, and adequate," it gives the settlement its final approval.  Fed. R. Civ. P. 23(e)(2).

Courts sitting in this procedural posture:

>should make clear that they are making a 'preliminary determination' on class-action certification for the purpose of issuing notice of settlement, and that they are reserving the issuance of a certification order until after a fairness hearing. The certification order ultimately issued must necessarily be entered before the district court approves the class settlement but need not occur before providing notice under Rule 23(e)(1). Permitting a district court to manage a settlement class in this manner provides the flexibility needed to protect absent class members' interests and efficiently evaluate the issues of class certification and approval of a settlement agreement.

*In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d at 586 (internal citations omitted).

### III.   DISCUSSION

In the instant Motion, Plaintiff seeks preliminary approval of the Class Settlement. For the following reasons, the Court will grant Plaintiff's Motion for Preliminary Approval of the Settlement Agreement.

####    A.   Whether Class Certification is Proper

During its preliminary fairness evaluation, this Court must first preliminarily determine whether class action certification is proper under Rule 23. "Although the [C]ourt will undertake a rigorous 'analysis' as to whether class certification is appropriate at the later fairness hearing, compliance with Rule 23(a) and (b) must still be analyzed at this juncture." *Silvis*, 2018 WL 1010812 at *3 (citing *In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d at 582-83). First, under Rule 23(a), Plaintiff must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the

5

class." These requirements are generally termed numerosity, commonality, typicality, and adequacy of representation.

Next, Rule 23(b)(3), under which Plaintiff now seeks class certification, requires that Plaintiff show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Lastly, after conducting the Rule 23(a) and (b)(3) analysis, the Court then determines whether the class is readily and currently ascertainable. *Marcus v. BMW of North America, LLC*, 687 F.3d, 583, 592-93 (3d Cir. 2012).

### 1. Rule 23(a) Factors

#### a. Numerosity

The proposed Settlement Class satisfies Rule 23(a)'s numerosity requirement. "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Rule 23(a)(1) requires only that a Plaintiff provide the Court with enough information so that it may determine whether the numerosity prong is satisfied. *Marcus*, 687 F.3d at 596 ("a plaintiff must show sufficient circumstantial evidence . . . to allow a district court to make a factual finding.")

Here, records show that Defendant sold approximately 30,000 Class vehicles within the United States, so it is estimated that there are about that many potential Class members. (Pl.'s Br. 11). Accordingly, although the Class excludes certain individuals affiliated with Defendant, the Court finds that the numerosity requirement is satisfied, and that joinder of all members is impracticable. (Pl's Br. 6 (noting that the Class excludes, *inter alia*, Defendant's affiliates,

employees, suppliers, officers, directors, attorneys, agents, insurers, and dealers, as well as all persons who previously released any claims encompassed in the Settlement.)).

### b. Commonality

The proposed Settlement Class satisfies Rule 23(a)'s commonality requirement. Rule 23(a)(2) requires that Plaintiff demonstrate the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Thus, class "claims must depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). If Plaintiff shares a single common question of law or fact with the prospective class, this will satisfy the requirement of Rule 23(a)(2). *See id.* at 359.

In the context of an allegedly defective automobile, courts in the Third Circuit routinely find the commonality element to be satisfied when a plaintiff asserts that a defendant's vehicle has a defective part. *See, e.g.*, *Marcus*, 687 F.3d at 597 (finding the commonality requirement satisfied where a plaintiff sought "to offer evidence about, among other things, whether Bridgestone RFTs are 'defective,' whether the defendants had a duty to disclose those defects, and whether the defendants did in fact fail to disclose those defects. . . . These issues of fact and law (or some subset of them) apply to each of [Plaintiff's] causes of actions . . . and are issues common to all class members."); *Martin v. Ford Motor Co.*, 292 F.R.D. 252, 267 (E.D. Pa. 2013) ("Proving the Benteler Axle was defective is a factual question central to each of Plaintiff's claims—breach of express and implied warranty, consumer protection violations, and unjust enrichment.").

Here, Plaintiff maintains that there are several questions of law and fact common to Plaintiff and prospective Class members. The Court agrees. Plaintiff alleges that the Smart Trunk feature of Class vehicles is defective because the trunk does not open fully when the "hands-free" feature is used. (Pl.'s Br. 13). Specifically, Plaintiff asserts that Class vehicles have a defect in their torsion bars which cause the trunk to fail to fully open, and that repairs performed on these vehicles have not fixed the problem. (*Id.*). Plaintiff further asserts that the Class vehicles are all subject to the same express warranty. (*Id.*). Because the issues of whether the Smart Trunk feature is defective and breaches Defendant's express warranty are common to both Plaintiff and prospective Class members, the Court finds that Rule 23(a)(2)'s commonality requirement is satisfied.

### c.      Typicality

Plaintiff's claims satisfy Rule 23(a)'s typicality requirement. Rule 23(a)(3) requires that Plaintiff's claims be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). The Court's typicality inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994). The typicality prong is satisfied where the representative plaintiff's claims arise from the same alleged wrongful conduct of the defendant as do those of other class members. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004).

When conducting the typicality analysis, the Third Circuit instructs that district courts must "consider the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class." *Marcus*, 687 F.3d at 598. Specifically, they must focus on the factual and legal similarities between the claims of the class representative and those of the class and whether

the interests and incentives of the representative are sufficiently aligned with those of the class. *Id.*

Here, Plaintiff asserts that his claims satisfy the typicality prong because both he and prospective Class members experienced the same defect of the Smart Trunk feature, and their vehicles were all subject to the same warranties. (Pl.'s Br. 14). Because each prospective Class member was allegedly harmed by a common course of conduct, Plaintiff's claims are both factually and legally similar to those of the Class, and the typicality prong is therefore satisfied.

### d.     Adequacy of Representation

Plaintiff satisfies Rule 23(a)'s requirement that the named plaintiff adequately represent the interests of the Class.  Rule 23(a)(4) requires that Plaintiff "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement helps to ensure that the named plaintiff and the class he seeks to represent do not have any conflicts of interest.  *Amchem Products v. Windsor*, 521 U.S.591, 625 (1997).  The Court first determines whether Plaintiff's counsel is appropriately qualified to represent the class, and next assesses whether any conflicts of interest exist.  *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 312 (3d Cir. 1998).

Here, Plaintiff maintains that the adequacy requirement is satisfied.  First, he asserts that his counsel "are highly qualified and experienced class action litigators familiar with the factual and legal issues involved [in the case]." (Pl.'s Br. 14).  The Court agrees.  Proposed Class counsel, James C. Shah and Natalie Finkelman Bennet of Shepherd, Finkelman, Miller & Shah, LLP; Noah Axler and Marc A. Goldrich of Axler Goldrich LLC; and Robert P. Cocco of Robert Cocco, P.C., have submitted resumes to the Court which show that counsel have extensive experience handling multiple class actions and other complex civil matters.  *See generally*

(Declaration of Natalie Finkelman Bennett Exs. 2-4, ECF Nos. 42-4, 42-5, 42-6).  In addition, counsel took part in extensive negotiations through a neutral mediator which resulted in the proposed settlement.  The Court therefore concludes that Plaintiff's counsel is well qualified to represent the Class.

Next, Plaintiff alleges that his interests are aligned with those of other class members, as both he "and the Class he seeks to represent share common interests with respect to seeking compensation for the alleged defects with the Class vehicles[,]" and that by proving his own claims, Plaintiff will help to prove the claims of other Class members.  (*Id.*).  The Court similarly believes that Plaintiff's interests are aligned with those of the of other Class members.  Both Plaintiff and the absent Class members have an equal interest in the relief offered by the Settlement Agreement.  In addition, the claims of Plaintiff and other Class members all arise from the same conduct, and they seek the same remedies.[2]  The Court therefore finds that there are no conflicts of interest between the Plaintiff and the Class that warrant a denial of class certification.

---

[2] While Class members who had a documented complaint about the Smart Trunk prior to the Settlement Agreement are eligible for compensation that is not available to all Class members, the Court does not find this creates a "fundamental" intra-class conflict between those who have already lodged a complaint and those who have not.  *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012) (citing *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1189 (11th Cir. 2003) ("Significantly, the existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy.")).  It is not clear from Plaintiff's Brief that he has already lodged a complaint with Defendant.  If he has, however, the Court does not find that this fact renders him an inadequate Class representative.

"An intra-class conflict will not necessarily prevent certification if the settlement agreement contains sufficient structural protections to ensure that the interests of the class will be adequately represented despite the conflict."  *Amchem*, 521 U.S. at 627.  Here, any class member who has already lodged a complaint and can be thought of as a "past" claimant maintains an interest in the relief granted to "future" claimants, as it is that relief which will ultimately address the issue with the Smart Trunk (the repair of a defective torsion bar), and for which the "past" claimant is similarly eligible.  *See Dewey*, 681 F.3d at 185-86 (finding that the alignment of interests of car owners with leaky sunroofs was not problematic because a "class member who has

Accordingly, the Court finds Plaintiff has satisfied the Rule 23(a) factors for preliminary class certification.

### 2. Rule 23(b)(3) Factors

In addition to meeting the requirements of Rule 23(a), a class representative must show that his claim falls into at least one of the categories found in Rule 23(b). Here, Plaintiff brings his claim under Rule 23(b)(3), which requires that "the court finds questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### a. Predominance

The predominance inquiry focuses "on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011); *see also Amchem*, 521 U.S. at 624 (stating that the predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."). The Rule 23(b)(3) predominance requirement incorporates Rule 23(a)'s commonality requirement, and the Court "analyze[s] the two factors together, with particular focus on the predominance requirement." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 528 (citations omitted). Where the Court finds that liability depends on the conduct of the defendant, and not on that of individual class members, Rule 23(b)(3)'s predominance requirement is satisfied. *Id.* at 528-29 (finding the predominance requirement satisfied where "liability depends on the conduct of DuPont, and . . . does not depend

---

already suffered leakage, and is thus a 'past' claimant, can continue to suffer leakage into the future to the same extent as a future claimant, and can continue to make future claims. As such, past claimants also have an incentive to protect the ability of class members to make claims for future damage.").

11

on the conduct of individual class members. . . . DuPont's alleged deceptive conduct arose from a broad-based, national campaign conducted by and directed from corporate headquarters, and individual reliance on the misrepresentations was irrelevant to liability.").

Plaintiff asserts that Defendant's conduct was common to all Class members, as Class vehicles have similarly defective trunks, Defendant issued the same warranties on these vehicles, and Class members were similarly harmed by Defendant's conduct. (Pl.'s Br. 15). The Court agrees that Plaintiff satisfies the predominance requirement. The conduct at issue here is that of Defendant, and not that of individual Class members. Therefore, there are questions of law and fact common to the settlement Class, and these questions predominate over individual ones with respect to Defendant's liability. As a result, the Court finds that a class action is the most efficient manner to adjudicate Class members' claims.

### b. Superiority

The superiority inquiry "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication[,]" such as joinder or individual trials. *Id.* at 533-34 (internal citations and quotation marks omitted). When assessing superiority in the context of a "settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 624 (internal citation omitted). If "each consumer has a very small claim in relation to the cost of prosecuting a lawsuit . . . a class action facilitates spreading of the litigation costs among the numerous injured parties and encourages private enforcement of the statutes[,]" which favors a finding of superiority. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 534.

Plaintiff asserts that class adjudication of his claims is "superior to individual trials, and joinder of all Class members is impracticable." (Pl.'s Br. 15). He further argues that without class certification, members of the proposed settlement Class "would go uncompensated because they would lack adequate monetary incentives to pursue their claims individually[,]" and that individual lawsuits would impose a heavy burden on the courts. (*Id.* at 16). The Court agrees that resolution of these claims as a class action is superior to individual lawsuits because it promotes efficiency. Similarly, because the individual claims are small in relation to the costs of litigating them, without the class action mechanism, individual plaintiffs would likely lack an incentive to pursue their claims. In addition, because this is a nationwide Class, there is a risk of inconsistent findings of liability were the claims to be litigated in multiple forums. The Court therefore finds that Plaintiff has satisfied the requirements of Rule 23(b)(3).

### 3. Ascertainability

The Court finds that the proposed Class is ascertainable. "A plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). The ascertainability inquiry requires a plaintiff to show both that: "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* (internal quotation marks and citations omitted). It requires only that the plaintiff "show that class members *can be* identified"; it does not ask that the plaintiff affirmatively identify them. *Id.* at 165.

Here, the class is defined with reference to objective criteria. Based on documents produced during discovery, Defendant sold approximately 30,000 Class vehicles within the United States. (Pl.'s Br. 11). Therefore, the Court finds that the putative class is ascertainable

because current owners of Class vehicles can be readily identified using Vehicle Identification Numbers.

Accordingly, for the above reasons, I conclude the settlement Class preliminarily satisfies Rules 23(a) and (b)(3). Thus, preliminary certification is proper.

### B.     Whether the Proposed Settlement is Fair

The Court next determines whether the settlement is "fair, reasonable, and adequate." *In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d at 316-17; *see also* Fed. R. Civ. P. 23(e)(2). "In deciding whether to grant preliminary approval of a proposed class action settlement, the court is required to determine only whether 'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval.'" *Silvis*, 2018 WL 1010812, at *6 (quoting *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014)); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (citation omitted) (stating that an initial presumption of fairness is established "when the [C]ourt finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; [and] (3) the proponents of the settlement are experienced in similar litigation[.]").

If there is a conceivable basis for presuming that the standard applied for final approval under Rule 23 will be satisfied, a settlement is deemed to fall within the range of possible approval. *Silvis*, 2018 WL 1010812 at *6; *see also Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") "The

decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975).

The Court concludes that the proposed Settlement is fair, reasonable, and adequate. First, the parties' negotiations occurred at arm's length and followed two mediation sessions. (Pl.'s Br. 5). Second, the parties have engaged in sufficient discovery. Plaintiff's counsel investigated the facts underlying his claims prior to the filing of his complaint. (*Id.* at 19). After Defendant's Motion to Dismiss was denied, experts were retained and the parties began to engage in discovery, and confirmatory discovery commenced once the parties were in the process of negotiating settlement. (*Id.*). Third, proposed Class counsel have extensive experience handling similar class action litigation, and they therefore appreciate the potential risks and benefits that settlement presents. *See generally* (Declaration of Natalie Finkelman Bennett Exs. 2-4). The Court finds that, on its face, the Settlement Agreement does not disclose grounds to doubt its fairness, and that it therefore appears proper under Rule 23(e)(2), as it is fair, reasonable, and adequate.

### C. The Propriety of the Notices

"In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). Rule 23(c)(2)(B) provides that class members must receive the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." Fed. R. Civ. P. 23(c)(2)(B). The Rule dictates that such notice must clearly state: (1) the nature of the action; (2) the definition of the certified class; (3) the class claims, issues, or defenses; (4) that a class member has the right to enter an appearance through an attorney; (5) that class members

have the right to be excluded from the class; (6) the terms for requesting exclusion; and (7) the binding effect of a class judgment on members. *Id.*

Rule 23(e) similarly requires that all members of the class be notified of the terms of a proposed settlement. Fed. R. Civ. P. 23(e)(1). "The Rule 23(e) notice is designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Action*s, 148 F.3d at 327. (internal quotation marks and citation omitted). "The combination of reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class satisfy the due process requirements of the Fifth Amendment." *Id.* at 306.

The Court finds that both the proposed methods for providing notice, as well as the content of said notices, meet the requirements for approval. The parties propose that Defendant's Consumer Affairs Division serves as Settlement Administrator, and in this role, be tasked with mailing individual direct notice to each Class member. (Pl.'s Br. 24). In addition, the Settlement Administrator will publish notice on a dedicated website. (*Id.*). These methods are more than sufficient and satisfy the requirements of Rule 23(c)(2)(B). *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Action*s, 148 F.3d at 327 (stating that "[p]roviding individual notice to . . . class members is a daunting task, and no doubt an expensive one . . . [and that] the combination of individual and publication notice . . . greatly increase[s] the possibility that Prudential will ultimately compensate a greater number of injured policyholders than would otherwise have been possible."); *see also* Fed. R. Civ. P. 23(c)(2)(B) (expressing a preference for individual notice when possible).

The proposed content of the notices similarly meets the requirements of Rule 23 and due process. Plaintiff summarizes the content of the notice:

> The proposed Long Form Notice is written in plain English and describes: (1) the nature of the claims in the case; (2) a description of the Settlement Class; (3) a description of the Settlement and the relief to be provided; (4) the consequences of opting out or remaining in the Class; and (5) how to get more information from this Court about the Settlement, the parties involved and the procedures to follow to object or opt out. The Notice also includes the deadline to object to or opt out of the Settlement, and the date of the Final Approval Hearing. The Notice also states that Class members can enter an appearance through counsel if desired. Finally, the Notice states how to get information about making a claim and the applicable deadlines for submitting a claim. Accordingly, the contents of the Notice meet all requirements and fully apprises Class members of their options.

(Pl.'s Br. 25 (internal citations omitted)). Plaintiff further explains that Defendant will bear the cost of providing notice. (*Id.*). The Court has reviewed the notice and concludes that it plainly explains the Settlement and the procedures for opting out. (Notices, Ex. B. to Ex. 1 of Declaration of Natalie Finkelman Bennet, ECF No. 42-3).

Accordingly, the Court finds that the proposed notice program satisfies Rule 23(c)(2)(B) and (e)(1), as well as due process requirements.

### D. Appointment of Counsel

Rule 23(c)(1)(B) states that an order certifying a class action must also "appoint class counsel under Rule 23(g)." Rule 23(g) provides that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). "Thus, under the plain language of the rule, a district court's decision to certify a class must *precede* the appointment of class counsel." *Sheinberg v. Sorenson*, 606 F.3d 130, 132 (3d Cir. 2010) (emphasis in original). In appointing class counsel, the Court considers counsels': (1) efforts to identify or investigate potential claims in the action; (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) knowledge of the applicable law; and (4) ability to commit the necessary

resources to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). A court must also ensure that class counsel will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

After reviewing the Motion and attachments, the Court concludes that counsels' work on the case thus far provides a substantial basis for finding that they satisfy the criteria of Rule 23(g), and are therefore well-qualified to serve as Class counsel. Counsel has spent significant time investigating Class members' claims. (Pl.'s Br. 19). Likewise, they are experienced and knowledgeable, and have the resources necessary to represent the class. *See generally* (Declaration of Natalie Finkelman Bennett Exs. 2-4). Therefore, the Court finds that James C. Shah and Natalie Finkelman Bennet of Shepherd, Finkelman, Miller & Shah, LLP; Noah Axler and Marc A. Goldrich of Axler Goldrich LLC; and Robert P. Cocco of Robert Cocco, P.C. should be appointed as Class counsel.

## IV. CONCLUSION

The Court finds that the requirements of Rules 23(a) and (b)(3) have been met. It further finds that the ascertainability requirement is met, and that preliminary certification of the Settlement Class appears proper. Moreover, the terms in the Settlement Agreement, as well as the forms of notice, appear fair, reasonable and adequate. As a result, the Court will grant Plaintiff's Motion for preliminary approval of the Settlement Agreement, and appoint Class counsel.

An appropriate order follows.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge